IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AIMEE D., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 4:24-CV-1143-Y-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Plaintiff's appeal of the denial of her application for Social Security disability benefits and supplemental security income, Doc. 1, is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons outlined here, the Commissioner's decision should be **REVERSED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Doc. 1.

In October 2013, Plaintiff filed for DIB alleging a period of disability beginning in July 2013.[1] Doc. 13-1 at 74. In 2014, the agency denied Plaintiff's DIB application. Doc. 13-1 at

---

[1] Plaintiff amended her alleged onset date to June 30, 2017, prior to her first hearing. Doc. 13-1 at 199.

103, 109.  In 2016 Plaintiff filed a written request for a hearing, and in 2018, Plaintiff protectively filed for SSI.  Doc. 13-1 at 8.  Plaintiff later testified at a 2018 administrative hearing before Administrative Law Judge Batik ("ALJ Batik").  Doc. 13-1 at 8, 42-73.  In 2019, ALJ Batik issued an adverse decision finding Plaintiff not disabled, which was later affirmed by the Appeals Council.  Doc. 13-1 at 8, 17-31, 103, 109.  In 2020, Plaintiff appealed to this Court in Case Number 4:20-CV-124-A-BJ.  Doc. 13-2 at 34.  In that case, in 2021, the Court reversed ALJ Batik's decision and remanded the case for further proceedings.  Doc. 13-2 at 40.  The Appeals Council subsequently remanded the case and vacated ALJ Batik's original Hearing Decision.  Doc. 13-2 at 60.

Plaintiff appeared for a second administrative hearing in 2023.  Following the hearing, ALJ Batik issued a second adverse decision finding Plaintiff not disabled.  Doc. 13-1 at 1055-62.  Plaintiff bypassed written exceptions and appealed directly to this Court in Case Number 4:23-CV-335-BP.  Doc. 13-2 at 707.  The Commissioner subsequently filed an unopposed motion to reverse and remand the ALJ's second adverse decision, Doc. 13-2 at 707, which the Court granted in 2024, Doc. 13-2 at 708.

On remand, the Appeals Council vacated ALJ Batik's second adverse decision and remanded Plaintiff's case to a different ALJ (hereinafter, "the ALJ"), for, *inter alia*, "further consideration of Dr. [Christopher] Bellah's opinion evidence regarding [Plaintiff's] ability for social interactions."  Doc. 13-2 at 712-14.  Plaintiff thus appeared for a third administrative hearing in 2024, after which the ALJ issued a third adverse decision, which was affirmed by the Appeals Council.  Doc. 13-2 at 631-48, 658-77.  By the instant action, Plaintiff once again seeks judicial review under 42 U.S.C. § 405(g).  Doc. 1.

**B. Factual History**

Plaintiff, who was 34 years old at the time of the onset of her alleged disability, has a high school education and no past relevant work.[2] Doc. 13-2 at 662, 646.  Plaintiff claimed she suffered from chronic back pain, a pinched nerve in her lower back, arthritis, left leg pain, and a herniated disc.  Doc. 13-1 at 74.  Plaintiff's medical records also reveal diagnoses of mental impairments, including depression and anxiety, as summarized below.[3]

Plaintiff's relevant medical history, dating from 2017 through 2022, reveals diagnoses of a mood disorder, a moderate episode of recurrent major depressive disorder, and generalized anxiety disorder.  Doc. 13-1 at 760; Doc. 13-2 at 580.  In 2019, Plaintiff presented to social worker Chaquita Gibson with a depressed mood and dull affect and stated that she only got three to four hours of sleep a night and was seeking therapy for depression.  Doc. 13-2 at 248-49.  A few weeks later, Dr. McBride-Houtz noted moderate to severe depressive symptoms and indicated that Plaintiff displayed some verbal aggression at times.  Doc. 13-2 at 252.  In 2022, Plaintiff voluntarily appeared at a psychiatric emergency center and was treated by registered nurse Emmanuel Okoroafor, APRN.  Doc. 13-2 at 549.  Nurse Okoroafor noted Plaintiff's depressed mood, irritability, helplessness, hopelessness, decreased energy, and poor concentration, as well as an anxious presentation.  Doc. 13-2 at 550.

---

[2] Although the ALJ stated Plaintiff was 30 years old on the alleged disability date, Plaintiff was 34 years old on the amended alleged disability onset date, which ALJ Batik corrected stated in his 2023 decision.  *See* Doc. 13-2 at 696.

[3] Plaintiff only alleges error in the ALJ's evaluation of Dr. Bellah's opinion regarding her mental capacity, Doc. 16 at 17-29, and does not allege any error in the ALJ's consideration of her physical capacity.  Accordingly, the Court focusses on the facts and issues related to Plaintiff's mental capacity.

**C. Medical Opinion Evidence**

In March 2022, Dr. Christopher G. Bellah, Ph.D., conducted a consultative examination of Plaintiff.  Doc. 13-2 at 197.  Dr. Bellah observed Plaintiff to be coherent and actively participating in the session.  Doc. 13-2 at 197.  Plaintiff reported that her mental health issues became prominent in 2014 due to the increase in her back problems.  Doc. 13-2 at 198.  Plaintiff also reported a significant and near constant preoccupation with worries and various symptoms of depression.  Doc. 13-2 at 198.  Plaintiff stated that she could bathe and groom herself but said her abilities to manage money and medications were limited and that she could not perform routine activities of daily living in a timely or appropriate manner without assistance.  Doc. 13-2 at 198.  Plaintiff additionally reported that she depended on her partner to manage her personal affairs and finances.  Doc. 13-2 at 198.  Dr. Bellah noted that Plaintiff had a limited support system and no close friends.  Doc. 13-2 at 198.

Dr. Bellah's functional assessment included that Plaintiff suffered from moderate limitations in understanding and remembering simple instructions, carrying out simple instructions, making judgments regarding simple work-related decisions, and interacting appropriately with the public, supervisors, and coworkers.  Doc. 13-2 at 203-04.  Dr. Bellah further opined that Plaintiff suffered from marked limitations in her abilities to understand and remember complex instructions, carry out complex instructions, make complex work-related decisions, and respond appropriately to usual work situations and changes in a routine work setting.  Doc. 13-2 at 203-04.  Dr. Bellah identified the factors supporting his opinion, including: Plaintiff's anxiety and depressive symptoms, borderline intellectual functioning, below normal intelligence, and chronic pain.  Doc. 13-2 at 203-04.

4

### D. Hearing Testimony

At the 2024 administrative hearing, Plaintiff testified that she cannot work because of her back problems and significant anxiety around people, and that she has trouble concentrating and focusing. Doc. 13-2 at 662-63. Plaintiff further testified that, due to her anxiety, she does not leave the house often—leaving only to go to doctors' appointments every few months. Doc. 13-2 at 663. Plaintiff testified that she does not perform any chores besides washing dishes because of her constant pain. Doc. 13-2 at 665. Plaintiff also testified that she still had issues with her back despite multiple surgeries, and that if she were forced to do a normal job, she would need more breaks than a typical person. Doc. 13-2 at 668, 671.

A vocational expert ("VE") testified that someone with Plaintiff's age, education, lack of work experience, and the ALJ's hypothetical RFC could perform work in the national economy as a bakery worker, mail clerk, or cleaner. Doc. 13-2 at 672. The VE also testified that if such an individual were off task for 15 percent of the day, there would be no available work. Doc. 13-2 at 672.

### E. The ALJ's Findings

Following the 2024 administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled. Doc. 13-2 at 631-48, 658-677. At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2022, Doc. 13-2 at 633, and that although Plaintiff had engaged in substantial gainful activity in 2016, there had been a continuous 12-month period in which Plaintiff had not engaged in substantial gainful activity.

Doc. 13-2 at 634.[4]  At step two, the ALJ determined that Plaintiff had the severe impairments of (1) degenerative disc disease of, and other degenerative changes to, the lumbar spine, with the residual effects of fusion surgeries; (2) left knee osteoarthritis; (3) bilateral carpal tunnel syndrome; (4) sequelae of pulmonary embolism; (5) diabetes mellitus; (6) anemia; (7) hypertension; (8) obesity; (9) anxiety disorder; (10) depressive disorder; (11) somatic symptom disorder; (12) and borderline intellectual functioning.  Doc. 13-2 at 634.  However, the ALJ further found that none of Plaintiff's impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations.  Doc. 13-2 at 634.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light work[,] . . . except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  She must never climb ladders, ropes, or scaffolds. She can frequently handle and finger bilaterally.  She can understand, remember, and carry out simple instructions.  She could tolerate occasional contact with supervisors, coworkers, and the public."  Doc. 13-2 at 640.  At step four, the ALJ concluded that Plaintiff had no past relevant work.  Doc. 13-2 at 646-47.  At step five, the ALJ found that Plaintiff had the RFC to perform a significant number of jobs that exist in the national economy.  Doc. 13-2 at 646-47.  Thus, the ALJ concluded that Plaintiff was not disabled under the Act.  Doc. 13-2 at 647.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial

---

[4]  The ALJ found that Plaintiff engaged in substantial gainful activity in 2016, which was before her 2017 amended alleged onset date.  However, ALJ Batik previously found in his 2023 Hearing Decision that Plaintiff had not engaged in substantial gainful activity since June 30, 2017.  Doc. 13-2 at 683.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . "  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work.  *Webster v. Kijakazi,* *19 F.4th 715, 718 (5th Cir. 2021)* (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  If the claimant meets her burden, the burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue,* 706 F.3d 600, 602 (5th Cir. 2012).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court cannot "reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary

choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

The RFC assessment is based on "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ as factfinder has the sole responsibility for weighing the evidence; and the relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

## III. ANALYSIS

### A. Discussion

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of Dr. Bellah. Doc. 16 at 4. The Commissioner disagrees. Doc. 17 at 1. Upon review, the Court finds that Plaintiff's arguments have merit.

To the extent Plaintiff argues that the ALJ erred by failing to evaluate Dr. Bellah's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c), *see* Doc. 16 at 14, she is mistaken in assuming § 404.1527(c) applies. Because Dr. Bellah examined Plaintiff only on one occasion, he does not qualify as a treating physician for purposes of the Social Security regulations. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008). And the ALJ is not required to apply the six-factor analysis in 20 C.F.R. § 404.1527 to non-treating physicians. *See Newton*, 209 F.3d at 455-56.

At the administrative levels, findings of fact made by consultative examiners regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources. 20 C.F.R. §§ 404.1527(e) [5], 416.927(e); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996). But even in the case of a non-treating physician, the ALJ may not ignore medical opinions and must explain in his or her decision the weight given to those opinions. *See Lockridge v. Colvin,* No. 3:12-cv-4135, 2014 WL 1255745, at *8 (N.D. Tex. Mar. 27, 2014) (Horan, J.) (citing SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996)).

Based on the foregoing, the ALJ needed only to consider Dr. Bellah's opinions as evidence to be weighed. And because Dr. Bellah was not a treating physician, the ALJ could reject them if there is contradictory evidence in the record. Nevertheless, the basis for rejecting or giving little weight to Dr. Bellah's decision must be explained. The ALJ failed in this regard.

The ALJ explains at the start of his 2024 post-remand Hearing Decision that, the Appeals Council directed him "to further consider [Plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base." Doc. 13-2 at 631. The ALJ's discussion of Dr. Bellah's opinions and persuasiveness is limited to a single paragraph:

> In March 2022, Dr. Bellah examined the claimant and said she had marked limitation in understanding and executing complex instructions, making complex decisions, and responding appropriately to usual work situations and changes in a routine work setting and moderate limitation in understanding and executing simple

---

[5] While the regulations have since been amended, those amendments are inapplicable here given Plaintiff's claim for benefits was filed before March 27, 2017. *See* 20 C.F.R. § 404.1520(c) (the agency's revised regulations apply to claims filed on or after March 27, 2017).

9

instructions, making simple decisions, and interacting appropriately with others (Exhibit 25F/8-9). The undersigned gives his opinion some weight. It is only somewhat supported by the claimant's adequate cognitive functioning, mood, effort, and behavior, and reported daily functioning during his examination despite her performance on standardized intellectual testing (*Id*. at 3-7). His assessment of marked mental limitation in completing complex instructions, making complex decisions, and responding appropriately to work pressure is inconsistent with the preponderance of the evidence in the record (Exhibits 1F/9; 4F/15; 5F/7; 6F/14; 7F/6, 41, 44; 11F/9; 12F/6,9,12,14; 15F/10, 13, 17; 16F/7; 19F/6, 12 ,21; 20F/4, 6, 10, 19, 21-22, 29, 37, 58; 22F/10; 26F/11, 22, 31, 55, 116, 129, 135, 180, 190-191,2 05, 243, 282, 351; 28F/8, 25, 49, 60, 75, 86, 105, 111, 122, 129).

Doc. 13-2 at 645. However, this paragraph constitutes nothing more than a summary of Dr. Bellah's medical opinions, followed by the conclusory statement that they are "inconsistent with the preponderance of the evidence in the record." This is insufficient. *See Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *4 (N.D. Tex. Mar. 14, 2022) (Ray, J.) ("Because the ALJ disregarded [a medical] opinion without explanation, the Court cannot fulfill its constitutional obligation and conduct meaningful judicial review of the Commissioner's decision." (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))), *adopted by* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022).

Not only did the ALJ fail to proffer a "good reason" why the record evidence found at the listed citations is inconsistent with Dr. Bellah's opinion, 20 C.F.R. §§ 404.1527 & 416.927, he did not bother to explain the purported inconsistencies. Although the Court is not required to scour the record for the inconsistencies to which the ALJ alludes, a sampling of the string-cited portions of the medical records reveal that they contain no evidence relevant to Plaintiff's mental impairments. For example, Exhibit 1F/9 is a 2013 physical examination related to Plaintiff's back pain, where the doctor notes a normal mood and affect. Doc. 13-1 at 323. Exhibit 6F/14 is a 2014 emergency room presentation related to acute upper respiratory infection and does not

10

appear to include any mental status findings.  Doc. 13-1 at 432.  Exhibit 7F/6 is a duplicate of this note. Doc. 13-1 at 440.  Exhibit 12F/14 is an X-ray of Plaintiff's pelvis from 2014.  Doc. 13-1 at 546.  Exhibit 28F/122 is from a 2024 appointment relating to Plaintiff's heart issues, which does not contain a mental status examination.  Doc. 13-2 at 986.

The ALJ's lack of care and candor in this regard is inexcusable.  *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (observing that the ALJ's analysis of medical opinions must provide "an accurate and logical bridge between the evidence and the final determination.").  It is not the role of this Court "to supply *post hoc* rationalizations for the ALJ's conclusions." *Ramirez v. Saul,* No. SA-20-CV-00457-ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021) (Chestney, J.).  Notably, the Appeals Council previously criticized the first ALJ for similarly citing to unrelated medical reports that, "as a whole, [did] not clearly reflect mild or less impairment in [Plaintiff's] interaction with others."  Doc. 13-2 at 713.

### B.  Harmless Error Analysis

Plaintiff argues that the ALJ's error was not harmless, Doc. 16 at 26, and the Court agrees.

"Procedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (citation and quotation marks omitted).  Thus, Plaintiff must show she was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing his RFC.  *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001).  To establish prejudice, Plaintiff must show that the ALJ's failure to rely on a medical opinion as to the effects her impairments had on her ability to work casts doubt on the existence of substantial evidence

11

supporting the ALJ's disability determination.  *See McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Here, it is impossible for the Court to determine whether the ALJ properly evaluated Dr. Bellah's medical opinions.  Likewise, the Court will not hazard to guess whether the ALJ might have found Plaintiff disabled if the ALJ had properly evaluated Dr. Bellah's medical opinions. It is clear, however, that Dr. Bella's medical opinions, if accepted, could have supported a finding of disability at Step Three based on Plaintiff's marked impairments in two areas of mental functioning.  *See* Doc. 13-2 at 203-04 (Dr. Bella's report describing marked limitations in remembering, carrying out, and understanding instructions and within the domain of interacting with others); *see also* Doc. 13-2 at 638 (ALJ's discussion that Plaintiff's impairments did not meet a 12.00 Listing for lack of two marked limitations in the broad areas of mental functioning). In any event, Dr. Bella's findings, if accepted, could have changed the ALJ's RFC and, thus, the determination at Step 5 of no disability.

Accordingly, the undersigned finds that Plaintiff was prejudiced by the ALJ's determination, without meaningful explanation, to give Dr. Bellah's opinion partial weight only.

**C.  Remedy**

Plaintiff requests that if the Court finds in her favor, the case be remanded with instruction to award benefits outright, rather than for a fourth round of administrative proceedings.  Doc. 16 at 27.  Alternatively, she requests that the case be assigned to a different ALJ.  The Commissioner does not address this request.  Doc. 16 at 28.

The Social Security regulations provide that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, at * 10 (N.D. Tex. Sept. 22, 2009) (Cummings, J.). District courts in this circuit have refused to remand a case for the award of benefits if a claimant did not meet "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted); *see, e.g.*, *Hart-Bevan v. Kijakazi*, No. 4:21-CV-145-ALM-KPJ, 2022 WL 4480316, at *9 (E.D. Tex. Sept. 9, 2022) (Johnson, J.), *adopted by* 2022 WL 4474259 (E.D. Tex. Sept. 26, 2022) (rejecting a request to remand for an award of benefits because claimant made no showing of a disability without any doubt under *Armstrong*); *Cockshutt v. Saul*, No. 3:19-CV-0896, 2020 WL 6393000, at *6 (N.D. Tex. Nov. 2, 2020) (Ramirez, J.) (same). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits, *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005) (per curiam), as the Commissioner, not the court, resolves evidentiary conflicts. *Newton*, 209 F.3d at 452.

While the undersigned has not found a case in which the Court of Appeals for the Fifth Circuit has specifically considered whether extraordinary delay is a basis for an award of benefits, there are instances when the appellate court has affirmed district court judgments remanding cases for the award of benefits when there is evidence of an extensive record, a lengthy administrative process due to no fault of the claimant, an ALJ's decision unsupported by

substantial evidence, and/or a claimant who is actually disabled.  *See, e.g.*, *McQueen v. Apfel,* *168 F.3d 152, 156 (5th Cir. 1999)* (reversing the district court's denial of benefits that was not supported by substantial evidence because the Commissioner had ignored "necessary" evidence without "good cause," and remanding for an award of benefits *despite inconclusive evidence as to claimant's disability* because his case had been pending for about 5 years); *Randall v.* *Sullivan*, *956 F.2d 105, 109 (5th Cir. 1992)* (noting the "extensive" medical record and affirming the lower court's remand to award benefits where it would be "unconscionable to remand this eight year old case to the Secretary for further review"); *Deters v. Sec'y of Health, Educ. &* *Welfare*, *789 F.2d 1181, 1186 (5th Cir. 1986)* (finding remand for an award of benefits was warranted because the ALJ ignored objective medical evidence of disability and the Commissioner's denial lacked substantial evidence when "[v]iewing the entire record as a whole"); *see also Shelton v. Astrue*, No. 1:08-CV-403, 2011 WL 1234910, at *2 (E.D. Tex. Jan. 31, 2011) (collecting district and appellate court cases "[g]enerally" involving "egregiously long delays in the administrative process, coupled with repeated administrative errors requiring multiple reversals and rehearings, and claimants who are actually disabled", and finding remands for further review "unnecessary", "contraven[ing] fundamental justice", "grossly unfair", or "perpetuat[ing] a ridiculous or out-of-control administrative process") (internal footnote omitted), *adopted by* 2011 WL 1191946 (E.D. Tex. Mar. 30, 2011).

Here, Plaintiff's claim for benefits has been pending for almost 13 years, the record surpasses 2,000 pages, and (as recounted in detail *supra*) due to the ALJs' repeated error involving the same issue, it already has resulted in three administrative hearings, two Appeals Council remands, and two previous judgments of this Court remanding the case for further

administrative proceedings.  *See McQueen*, 168 F.3d at 156 (remanding almost 5-year-old case

for award of benefits); *Randall*, 956 F.2d at 109 (noting the "extensive" medical record in

remanding 8-year-old case for an award of benefits).  As a sister court aptly explained:

> the core rationale [for remand with instructions to award benefits] seems to be that the Commissioner is not entitled to limitless opportunities to repair a record.  At some point, the Commissioner runs out of time, and courts justifiably may conclude that further administrative proceedings serve no useful purpose, but rather would cross the line to a miscarriage of justice.

*Shelton*, 2011 WL 1234910, at *3.  For these reasons, Plaintiff's request for remand with

instruction to award of benefits should be granted.

## IV. CONCLUSION

The Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly, the Commissioner's decision should be **REVERSED** and **REMANDED,** with

instructions to grant Plaintiff's applications for benefits under the Act and calculate and award

Plaintiff the benefits due her, consistent with this opinion.

**SO ORDERED** on March 9, 2026.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

15

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).